IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


BRADLEY L. WYCKOFF,                        )   Civil No.: 6:12-cv-01861-JE
                                           )
                  Plaintiff,               )    FINDINGS AND
                                           )   RECOMMENDATION
            v.                             )
                                           )
CAROLYN W. COLVIN,                         )
Acting Commissioner of Social Security,    )
                                           )
                  Defendant.               )
_____   )

          Kathryn Tassinari
          Robert A. Baron
          Harder, Wells, Baron & Manning, P.C.
          474 Willamette, Suite 200
          Eugene, OR 97401

                  Attorneys for Plaintiff


          S. Amanda Marshall, U.S. Attorney
          Adrian L. Brown, Asst. U.S. Attorney
          1000 S.W. 3rd Avenue, Suite 600
          Portland, OR 97204


FINDINGS AND RECOMMENDATION – 1

Nancy Mishalanie
Special Asst. U.S. Attorney
Office of the General Counsel
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA 98104-7075

      Attorneys for Defendants

JELDERKS, Magistrate Judge:

      Plaintiff Bradley Wyckoff brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying his applications for Disability Income Benefits (DIB) and Supplemental Security Income (SSI) benefits under the Social Security Act (the Act).  Plaintiff seeks an Order remanding the action to the Social Security Agency (the Agency) for an award of benefits or, in the alternative, an Order remanding for further proceedings.

      For the reasons set out below, the Commissioner's decision should be reversed and the action should be remanded to the Agency for an award of benefits.

## **Procedural Background**

      Plaintiff filed his applications for DIB and SSI on July 28, 2008, alleging he had been disabled since August 15, 2000.

      After his claims had been denied initially and on reconsideration, Plaintiff timely requested an administrative hearing.

      On July 13, 2010, a hearing was held before Administrative Law Judge (ALJ) John Madden, Jr. at which Plaintiff testified.  A supplemental hearing was held before ALJ Madden on February 3, 2011.  Plaintiff and Jeffrey Tittlefitz, a Vocation Expert (VE) testified at this second hearing.

FINDINGS AND RECOMMENDATION – 2

In a decision dated March 25, 2011, ALJ Madden found that Plaintiff was not disabled within the meaning of the Act.  That decision became the final decision of the Commissioner on August 13, 2012, when the Appeals Council denied Plaintiff's request for review.  In the present action, Plaintiff challenges that decision.

### Background

Plaintiff was born on July 22, 1960, and was 40 years old on the date of his alleged onset of disability and 50 years old at the time of the ALJ's decision.  Plaintiff graduated from high school and has past relevant work experience as a construction worker and flagger.

### Disability Analysis

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act.  20 C.F.R. §§ 404.1520, 416.920.  Below is a summary of the five steps, which also are described in Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Step One.  The Commissioner determines whether the claimant is engaged in substantial gainful activity (SGA).  A claimant engaged in such activity is not disabled.  If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's case under Step Two.  20 C.F.R. § 404.1520(b).

Step Two.  The Commissioner determines whether the claimant has one or more severe impairments.  A claimant who does not have such an impairment is not disabled.  If the claimant has a severe impairment, the Commissioner proceeds to evaluate the claimant's case under Step Three.  20 C.F.R. § 404.1520(c).

Step Three.  Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the

presumptively disabling impairments listed in the Social Security Administration (SSA)

regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1.  A claimant who has such an impairment

is disabled.  If the claimant's impairment does not meet or equal an impairment listed in the

regulations, the Commissioner's evaluation of the claimant's case proceeds under Step Four.

20 C.F.R. § 404.1520(d).

Step Four.  The Commissioner determines whether the claimant is able to perform

relevant work he or she has done in the past.  A claimant who can perform past relevant work is

not disabled.  If the claimant demonstrates he or she cannot do work performed in the past, the

Commissioner's evaluation of the claimant's case proceeds under Step Five.  20 C.F.R.

§ 404.1520(f).

Step Five.  The Commissioner determines whether the claimant is able to do any other

work.  A claimant who cannot perform other work is disabled.  If the Commissioner finds that

the claimant is able to do other work, the Commissioner must show that a significant number of

jobs exist in the national economy that the claimant can do.  The Commissioner may satisfy this

burden through the testimony of a vocational expert (VE) or by reference to the Medical-

Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2.  If the Commissioner

demonstrates that a significant number of jobs exist in the national economy that the claimant

can do, the claimant is not disabled.  If the Commissioner does not meet this burden, the claimant

is disabled.  20 C.F.R. § 404.1520(g)(1).

At Steps One through Four, the burden of proof is on the claimant.  Tackett, 180 F.3d at

1098.  At Step Five, the burden shifts to the Commissioner to show that the claimant can perform

jobs that exist in significant numbers in the national economy.  Id.

FINDINGS AND RECOMMENDATION – 4

<u>**Testimony**</u>

<u>**Plaintiff**</u>

Plaintiff testified as follows at the hearings before the ALJ.

Plaintiff lives with his mother.  He was in a special education program in high school but received a regular diploma upon graduation.  He attempted to join the military but was turned down due to his diabetes.  Plaintiff's sister helped him with the forms for his application for benefits because words "just bleed together" and "[i]t's hard for me to pick words out of a sentence."

Plaintiff is on insulin and keeps a blood sugar log for his diabetes.  He tests his blood sugar about six times a day unless he has the flu or "something else happens" and then he tests it about 10 times a day.  Plaintiff doesn't know what his average blood sugar level is.  He is on a diabetic diet but when asked about whether he understood what his doctor meant by a "carbohydrate calorie ratio," Plaintiff testified that he "doesn't know what they're talking about." It has been hard for him to manage his diabetes and he has issues with confusion.   Plaintiff stated that as a Type I diabetic he cannot tell when his blood sugar is getting low.

Plaintiff has sustained "quite a few" head injuries.  In 1981, he "took a windshield out" with his head in a head-on collision.  When he was a child, he had a 10-pound rock hit him in the forehead and when he was in fourth grade he was hit by a 2x4.  In 2009, he was involved as a passenger in an auto collision and "took the side window out with the back of my head."

Plaintiff has problems with memory, anxiety and getting along with people.  These issues have affected his work.  He experienced problems in one job when he couldn't make "finite calculations" for drilling.  When he worked as a flagger he had a supervisor start yelling at him because the supervisor wanted a radio that Plaintiff had and Plaintiff "had to throw my radio at

him and shut him up."  Plaintiff has had other people yell at him at work and has had problems

due to his blood sugar getting too low.  When he was working in Redding, California as a laborer

"they constantly had to call 911 on me to get my blood sugar up."  Plaintiff does not think he

could work at his flagging job now because "when we're out 500 miles away from any town and

they have to call paramedics to put an IV in me to get my blood sugar up.  I couldn't do it."

Plaintiff has a regular driver's license but drives with someone else because when his

blood sugar gets low he's "like a drunk driver."  He used to help his mother with yard work but

has not done so since his last accident in May 2009.  In May of 2010, he pulled a garden hose

from one side of his house to the other and when he bent down to pick up the garden hose it

strained his neck.  Plaintiff goes to the store with his mother and "once in a blue moon" goes by

himself but it is difficult for him because people "bug" him.  Plaintiff testified that he goes to

church "sometimes" but then stated that he hadn't been to church in five years.  He doesn't

regularly attend any social activities.  He last went hunting about ten years ago and had sold all

his guns and camping equipment within the last two years.  He told one of his treating physicians

that he would like to go back out hunting but was afraid to because his blood sugar dropped so

dramatically.

Plaintiff gets "massive headaches" three or four times a week.  He takes Vicodin and

aspirin for the headaches and once to twice a month will have to lie down for an hour to an hour-

and-a-half.  Plaintiff has suicidal thoughts once or twice a month and on those days he goes to

his room and tries to relax.  Once or twice a month he doesn't get out of bed because he

physically does not feel well.  Plaintiff testified that if he had a job where he had to be there five

days a week, eight hours a day he would be "hurting" because he would not be able to stop and

go get something to eat.  He thinks that his head injuries have made it harder for him to be able

to care for himself and that if he wasn't living with his mother he would be "living underneath a bridge, if not dead."

**Lay Witness Testimony**

Plaintiff's sister, Cynthia Leming, submitted a "To whom it may concern" statement dated February 12, 2011.  Ms. Leming stated that she was able to observe both her brother's physical and mental disabilities on a "semi daily basis."  Ms. Leming stated that Plaintiff exhibited difficulties with attention, concentration, distractibility, memory, speed of processing, confusion, perseveration, impulsiveness, understanding language and other execution functions and with resisting habitual responses such as unprovoked explosive outbursts of anger.  She stated that Plaintiff's mental state has continued to deteriorate and he has had "serious suicidal ideation with intent and easy access to means."  Plaintiff lived with Ms. Leming and her family but she was unable to constantly monitor him due to his erratic behaviors and her full time work schedule.  She would have to "intervene with help from EMT's at least once a month."  Ms. Leming added that although new medication in the last year has helped stabilize his blood sugars, brain damage from numerous traumatic brain injuries and the long term effect of chronic insulin shock has already occurred.  Ms. Leming stated that Plaintiff is unable to function without their mother's monitoring and that he plans to commit suicide when their mother dies.

**Vocational Expert**

The ALJ asked the VE to consider an individual of Plaintiff's age, education and experience who should avoid hazardous settings due to fluctuating blood sugar levels.  The VE testified that such an individual would not be able to perform Plaintiff's past work as a construction worker.  The ALJ then added that this individual would be limited to remembering and carrying out some simple and some detailed work instruction; limited to only occasionally

FINDINGS AND RECOMMENDATION – 7

carrying out more detailed work instruction and would be limited to only occasional interaction with the general public.  The VE testified that such an individual would be able to perform Plaintiff's past relevant work as a flagger and work as packing line worker, janitor or hand packager.  The VE further testified that an individual who missed work one or two days a month and had to lie down for an hour to an hour-and-a-half once or twice a month would not be able to maintain employment.

In response to questioning by Plaintiff's counsel, the VE testified that marked limitations in the ability to interact with the public would impair the ability to work as a flagger and that a marked limitation in the area of interacting appropriately with supervisors or coworkers would, in most cases, preclude employment.  He further testified that the inability to work an eight-hour day or manage workday stresses would eliminate employment.

## Medical Record

I will address relevant parts of the medical record in the discussion of the parties' contentions below.

## ALJ's Decision

As an initial matter, the ALJ found that Plaintiff met the insured status requirements of the Act through March 31, 2010.

At the first step of his disability analysis the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of his disability.  Although the Plaintiff's wage record indicates that he had earnings in the years 2000 through 2008, the ALJ found that the earnings during this period did not rise to the level of substantial gainful activity.

FINDINGS AND RECOMMENDATION – 8

At the second step, the ALJ found that Plaintiff had the following severe impairments: insulin dependent diabetes mellitus, depression/dysthymia, generalized cognitive disorder, cognitive disorder and borderline intellectual functioning.

At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled a presumptively disabling impairment set out in the listings, 20 C.F.R. Part 404, Subpart P., App. 1.  In making this determination, the ALJ found that although Plaintiff's mental impairments satisfied the "A" criteria of sections 12.02, 12.04 and 12.06, the record did not support a finding that the requirements of either the "B" or "C" criteria were satisfied.

The ALJ next assessed Plaintiff's residual functional capacity (RFC).  He found that Plaintiff retained the capacity to perform a full range of work at all exertional levels, subject to the following limitations:  he must avoid hazardous settings, including unprotected heights and moving machinery due to fluctuating blood sugar levels; could only occasionally carry out and remember more complicated instructions; could perform simple tasks and could only occasionally interact with the general public.  The ALJ found that Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not credible to the extent they were inconsistent with this assessment.

Based upon the testimony of the VE, at the fourth step the ALJ found that Plaintiff could perform his past work as a flagger as that job was generally performed in the national economy.

At the fifth step, based on the testimony of the VE, the ALJ also alternatively found that Plaintiff could perform "other work" that existed in significant numbers in the national economy. He cited packing line worker, janitor, and hand packager as examples of such work.  Based upon

his finding at step four and alternative finding at step five, the ALJ found that Plaintiff was not disabled within the meaning of the Act.

## **Standard of Review**

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  Claimants bear the initial burden of establishing disability.  Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996).  The Commissioner bears the burden of developing the record,  DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991), and bears the burden of establishing that a claimant can perform "other work" at Step Five of the disability analysis process.  Tackett, 180 F.3d at 1098.

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews, 53 F.3d at 1039.  The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision.  Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).  The Commissioner's decision must be upheld, however, even if "the evidence is susceptible to more than one rational interpretation."  Andrews, 53 F.3d at 1039-40.

## **Discussion**

Plaintiff contends that the ALJ erred in rejecting the opinion of examining psychologist, Dr. Alison Prescott, in failing to provide germane reasons for rejecting lay witness testimony, in

FINDINGS AND RECOMMENDATION – 10

finding that Plaintiff was not wholly credible and in concluding that he could perform his past work or "other work" in the national economy.

I.  **ALJ's Evaluation of the Opinion of Examining Psychologist Dr. Alison Prescott**

**Dr. Prescott's Opinion**

In August, 2010, as a result of Plaintiff's attorney's request and the ALJ's order, Dr. Prescott conducted a neuropsychological examination of Plaintiff.  Dr. Prescott interviewed Plaintiff, summarized Plaintiff's medical and psychological history, conducted a mental status examination and psychological testing and set out her diagnoses.  Dr. Prescott noted that Plaintiff appeared well-groomed, that his speech was sparse and rather short and that he appeared guarded and uncomfortable with a "very flat" affect, no facial expression at all and poor eye contact.

Plaintiff's mental status examination revealed "fair" short term memory but impairments in concentration.  He had difficulty spelling "world" backwards, dividing 100 by 4 and in completing the Letter Number Sequencing task.  A brief screening measure for dementia returned a result of 21 out of 30 points which was "inside the range for neurological impairment."  Plaintiff could not reproduce a cube correctly in a drawing or correctly draw a clock showing a certain time.

Dr. Prescott noted that Plaintiff appeared to be of low average to average intellectual function.  She noted that he showed poor social functioning due to his avoidance of others and his depression and was anxious and very guarded around others.  Dr. Prescott noted that Plaintiff was cooperative and demonstrated good effort during the WAIS-III, a standardized test of cognitive skills. Verbal IQ, Performance IQ and Full Scale IQ scores were all in the borderline range.  Plaintiff's scores from a standardized test of learning and memory skills were in the low end of average to borderline level.  Dr. Prescott noted that these scores showed indications of

cognitive impairment.   Dr. Prescott diagnosed Plaintiff with major depressive disorder,

recurrent; generalized anxiety disorder; cognitive disorder, NOS; borderline intellectual

functioning and chronic pain in back, neck and elbow, Type I diabetes and headaches.

Dr. Prescott also submitted a Medical Source Statement of Ability to do Work-Related

Mental Activities (Medical Source Statement).  Dr. Prescott indicated that Plaintiff had "marked"

impairment in his ability to carry out complex instructions and make judgments on complex

work related decisions, noting that he showed impairment with memory and concentration as

well as neurological deficits and borderline intellectual functioning.  Dr. Prescott also indicated

that Plaintiff had "marked" impairments in his ability to interact appropriately with the public,

supervisors and co-workers.  She noted that Plaintiff has poor social functioning, is severely

depressed, very defensive and guarded, "anticipates adverse judgments" and shows "low

adaptability."  Dr. Prescott opined that Plaintiff's ability to work eight hours a day and manage

normal work day stresses would be affected by his impairments.

**The Opinions of Drs. Hennings and Northway**

In October 2008, licensed psychologist David Northway conducted a psychodiagnostic

assessment of Plaintiff.  Dr. Northway noted that Plaintiff appeared "moderately dysphoric" and

did not appear to be exaggerating or embellishing psychological deficits.  Dr. Northway noted

that based on mental status testing, Plaintiff appeared to have a low average to average range of

intelligence and that he had significant difficulties on a verbal memory measure.  Dr. Northway

wrote that

> based on the simple un-normed tasks used for this assessment, his verbal memory
> appears to be moderately to severely impaired while he also performed poorly on
> attentional measures. . . . it appears he would have a hard time learning,
> understanding, and remembering new tasks and information particularly if they
> were more complex in nature.  It also seems likely that he would complete tasks
> more slowly than his peers.

FINDINGS AND RECOMMENDATION – 12

Dr. Northway noted that a neuropsychological consultation was warranted by Plaintiff's performance on the mental status tasks he administered.

In August 2010, Dr. Bill Hennings, a non-examining state agency psychologist reviewed Plaintiff's records and opined that Plaintiff was "moderately" limited in his ability to understand and remember detailed instructions; "moderately" limited in his ability to carry out detailed instructions; and "moderately" limited in his ability to interact appropriately with the general public and in his ability to be aware of normal hazards and take appropriate precautions. Dr. Hennings opined that Plaintiff was capable of interacting appropriately with coworkers and supervisors but that his mental health symptoms would limit him from interacting frequently with the general public. Dr. Hennings also opined that Plaintiff was capable of understanding, remembering and carrying out simple and some detailed work instructions, sustaining concentration for typical work periods, and completing a normal workday/workweek but was limited in understanding, remembering, and carrying out complex work tasks frequently due to cognitive and intellectual limitations.

## **Evaluating Medical Opinion**

The opinion of an examining physician is entitled to greater weight than the opinion of a non-examining physician. Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990). An ALJ must provide clear and convincing reasons for rejecting the uncontradicted opinions of an examining physician, id., and must provide specific and legitimate reasons for rejecting opinions of an examining physician that are contradicted by another physician. Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995). A non-examining physician's opinion "cannot by itself constitute substantial evidence that justifies rejection of the opinion of either an examining physician or a treating physician." Lester, 81 F.3d at 830–31.

FINDINGS AND RECOMMENDATION – 13

**Analysis**

I have found no opinions of treating or examining physicians in the medical record directly contradicting Dr. Prescott's opinion as to the severity of Plaintiff's mental impairments. Though Defendant cites Dr. Northway's opinion and the GAF score of 62 he assigned to Plaintiff as supporting the opinion of Dr. Hennings, Dr. Northway's overall findings are not inconsistent with those of Dr. Prescott. A review of the record reveals that only Dr. Henning's opinion is at odds with that of Dr. Prescott. Because the opinions of non-examining state agency consulting psychologists do not constitute substantial evidence supporting rejection of Dr. Prescott's opinion, the ALJ was required to provide clear and convincing reasons for its rejection.

The ALJ gave "great weight" to Dr. Prescott's opinion to the extent it established Plaintiff's severe impairments. The ALJ also noted that Dr. Prescott's handwritten notations on her submitted Medical Source Statement "were consistent with her examination findings and the discussion contained therein . . . ." However, without explaining his basis for doing so, the ALJ found that "it appears that Dr. Prescott overstated claimant's deficits in some areas of functioning in light of the examination findings" and thus gave her opinion "little weight." In addition, the ALJ noted that he accepted Dr. Prescott's examination findings, the examination discussion and the handwritten notes on the Medical Source Statement but did not accept that Plaintiff had "marked" limitations in some areas of functioning.

The ALJ provides no reasons, much less clear and convincing reasons, for rejecting Dr. Prescott's opinion regarding Plaintiff's mental limitations. He does not explain why, although he accepts Dr. Prescott's examination findings, discussion, notations and even her opinion to the extent it establishes Plaintiff's severe impairments, he disagrees with Dr. Prescott's conclusion that Plaintiff has "marked" limitations in some areas of functioning . Instead, he merely states

FINDINGS AND RECOMMENDATION – 14

that it "appears" as if she has overstated Plaintiff's deficits.  The ALJ then moves on to give

"great weight" to the opinion of a non-examining state agency psychological consultant.  This

approach is inadequate.  See Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988)(ALJ must

do more than offer conclusions but must set forth own interpretations and explain why they,

rather than the doctors', are correct).

Defendant argues that the ALJ reasonably evaluated and weighed the medical evidence.

Defendant contends that the ALJ properly gave greater weight to Dr. Henning's opinion because

it was based on all of the records, was consistent with the evidence and was supported by the

opinion of Dr. Northway.  Defendant also asserts that Dr. Prescott's assessment of Plaintiff's

ability to interact with supervisors and co-workers was supported solely by Plaintiff's non-

credible reporting.  These arguments, however, were not specifically advanced by the ALJ in his

decision.  See, e.g. Stout v. Comm'r. of Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir.

2006)(agency decision may not be affirmed on a ground the agency did not invoke in making its

decision).  Defendant's arguments thus fail.

In addition, the record supports the conclusion that Dr. Prescott relied on objective testing

and her own observations in assessing Plaintiff's functional limitations and those assessments

were not inconsistent with the opinions of other treating or examining physicians.

As noted above, the VE testified that marked limitations in the ability to interact with the

public would impair the ability to work as a flagger and that a marked limitation in the area of

interacting appropriately with supervisors or coworkers or the inability to work an eight-hour day

or manage workday stresses would eliminate employment.  Dr. Prescott's properly credited

opinion, in conjunction with the VE's testimony, require a finding of disability.

FINDINGS AND RECOMMENDATION – 15

Where, as here, an ALJ provides inadequate reasons for rejecting the opinion of a treating or examining physician, that opinion is credited as a matter of law. Lester, 81 F.3d at 834.   A reviewing court then has discretion to remand the action for further proceedings or for a finding of disability and an award of benefits. See, e.g., Stone v. Heckler, 761 F.2d 530, 533 (9th Cir.1985). Whether an action is remanded for further proceedings depends on the likely utility of additional Agency consideration.  Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.2000). A reviewing court should credit the evidence and remand for a finding of disability and an award of benefits if: 1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; 2) there are no outstanding issues to be resolved before a determination of disability can be made; and 3) it is clear from the record that the ALJ would be required to find the claimant disabled if the evidence in question were credited. Smolen, 80 F.3d at 1292 .

Here, the ALJ failed to provide legally sufficient reasons for rejecting the opinion of Plaintiff's examining physician, there are no outstanding issues that need to be resolved before a determination of disability can be made, and it is clear from the record that a finding of disability would be required if Dr. Prescott's opinion were credited. Under these circumstances, this action should be reversed and remanded to the Agency for an award of benefits.

II. **Plaintiff's Credibility**

As noted above, the ALJ found that Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not wholly credible.  Plaintiff contends that the ALJ failed to provide clear and convincing reasons for rejecting Plaintiff's testimony. Though my conclusion that this action should be reversed and remanded for an award of benefits on other grounds makes it technically unnecessary to do so, I will briefly address this issue in order to create a full record for any possible review.

FINDINGS AND RECOMMENDATION – 16

**Evaluating A Claimant's Credibility**

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.  Andrews, 53 F.3d at 1039.  Where, as here, a claimant produces medical evidence of an underlying impairment that is reasonably expected to produce some degree of the symptoms alleged, and there is no affirmative evidence of malingering, an ALJ must provide "clear and convincing reasons" for an adverse credibility determination. Smolen, 80 F.3d at 1281; Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006).  An ALJ must also specifically identify evidence that undermines a claimant's testimony.  See Morgan v. Commissioner, 169 F.3d 595, 599 (9th Cir. 1999) (ALJ making adverse credibility finding must identify testimony undermining credibility).

The ALJ set forth numerous reasons for finding Plaintiff's testimony regarding the intensity, persistence and limiting effects of his symptoms less than credible:  there were gaps in Plaintiff's treatment record, he had sustained several head injuries that allegedly caused memory deficits and confusion, he had a long history of poorly managed diabetes, Plaintiff alleged he was asymptomatic when his blood sugar was low but then described several low-blood sugar symptoms, treatment records indicated Plaintiff was going on another hunting trip soon but Plaintiff testified that he had last been hunting ten years ago, Plaintiff's testimony that he had problems with anxiety and getting along with others was inconsistent with treatment records that Plaintiff was "doing well" on Wellbutrin and that he only had one or two "bad days" a month, Plaintiff testified that he does not do yard work but then acknowledged that he performed yard work prior to his 2009 accident, and Plaintiff's activities of daily living were inconsistent with the record.  The ALJ noted that Plaintiff's inconsistent reporting of information undermined his credibility and reliability as a historian.

Based upon a careful review of the record, I conclude that some of these reasons are supported by the record and that these reasons are sufficient to discount the credibility of Plaintiff's statements. Some of the ALJ's reasons, however, are deficient or rely on interpretations of the record that fail to take into consideration Plaintiff's medically evident cognitive limitations.

Plaintiff's inability to manage his diabetes and gaps in treatment, for instance, are not clear and convincing reasons for discounting Plaintiff's testimony. The record suggests that the gaps in Plaintiff's treatment were, at least in part, due to his inability to pay for medical care. See Orn v. Astrue, 495 F3d 625, 638 (9th Cir 2007). The record does not reflect that the poor management of Plaintiff's diabetes stemmed from his unwillingness to manage it but, instead, treatment records and Plaintiff's hearing testimony reflect that Plaintiff's ability to understand what he needed to do to control his diabetes was limited despite numerous attempts by treatment advisors to educate him.

The ALJ's reference to Plaintiff's multiple head injuries is also not a clear and convincing reason for discounting statements about his symptoms and their functional effects. If anything, this history of injury supports Plaintiff's allegations concerning the severity of his mental limitations.

However, the ALJ did correctly note internal inconsistencies in Plaintiff's statements and inconsistencies with the record. The ALJ indicated that Plaintiff's inconsistent reporting of information undermined his credibility and reliability as a historian. Inconsistencies in a disability claimant's testimony support a decision by the ALJ that a claimant lacks credibility. See, e.g., Tommasetti, 533 F.3d at 1040 (inconsistent and less than candid statements support adverse credibility finding). It is the role of the ALJ, and not this court, to resolve conflicts and ambiguities in the evidence. Magallanes, 881 F.2d at 751. If the ALJ's decision is supported by substantial evidence

this court may not substitute its own judgment for that of the ALJ even if it may have reached a different result upon de novo review. 42 U.S.C. § 405(g).

I find it important to note, however, that the Plaintiff here does not claim exertional limitations but instead alleges limitations connected to having periods of low blood sugar and cognitive, emotional and mental impairments.  These impairments would also be expected to cause the inconsistencies and confusion in Plaintiff's reporting that the ALJ notes.  Although these impairments would support a finding that the Plaintiff was not intentionally fabricating, the SSR rulings define credibility as "the degree to which [an individual's] statements can be believed and accepted as true."  SSR 96-7P.  Although I have found no reason to question Plaintiff's honesty, in applying the above definition of credibility I conclude that the ALJ's decision is supported by substantial evidence.  Although not all of the reasons offered by the ALJ in support of his credibility determination were adequate, a sufficient number were clear and convincing and supported by the record.

III.  **Consideration of Lay Witness Testimony**

As noted above, Cynthia Leming, Plaintiff's sister, submitted a written statement describing Plaintiff's mental and physical limitations.  The ALJ noted that Ms. Leming's statement "further endorses that claimant's diabetes is poorly controlled and that he experiences depressive symptoms" but that "even if considered generally credible, Ms. Leming's statement does not provide a basis for altering the above residual functional capacity."

Plaintiff argues that the ALJ's consideration of Ms. Leming's statement was "inadequate and incomplete."

I agree.  The ALJ's assertion that the observations Ms. Leming provided regarding Plaintiff symptoms were accommodated by Plaintiff's RFC and his ambiguous statement that "even if" Ms. Leming's statement was "considered generally credible" it did not provide a basis

FINDINGS AND RECOMMENDATION – 19

for altering the RFC are insufficient reasons for discounting the lay witness evidence.  Although this court has concluded that the ALJ properly discounted Plaintiff's testimony, Ms. Leming's statements provided details and observations of Plaintiff's mental and physical symptoms that went beyond Plaintiff's own description of his impairments and were not inconsistent with the objective medical evidence.   If these observations had been properly credited, the ALJ's RFC would have been inadequate in addressing them.   An ALJ must provide reasons that are "germane" for rejecting lay witness testimony.  Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012).  The ALJ here implicitly rejected the lay evidence provided in Ms. Leming's statement without providing a basis for doing so.

## IV.  <u>ALJ's Determinations at Steps 4 and 5</u>

Plaintiff contends that the ALJ erred in finding that Plaintiff retained the capacity to perform his past relevant work as a flagger or other work as a packing-line worker, janitor or hand packager.  Plaintiff argues that if Dr. Prescott's opinion is properly credited, it and the VE's testimony establish that Plaintiff is disabled and that the lay evidence further supports Plaintiff's claim for disability.  Plaintiff also argues that although the ALJ included a limitation to simple tasks in his RFC, the ALJ's hypothetical to the VE and his RFC failed to address the ALJ's own finding that Plaintiff had "moderate" limitations in concentration, persistence or pace.

As discussed above, I agree that Dr. Prescott's opinion should be fully credited and the case remanded for an award of benefits.  This conclusion makes it unnecessary to reach Plaintiff's additional contentions as to the ALJ's determinations at Step 4 and 5.  However, I note that if I were to reach the question of whether the ALJ's RFC and hypothetical failed to address the ALJ's finding at Step 2 that Plaintiff has "moderate" limitations in concentration, persistence or pace, I would, as in past decisions, base my analysis on the guidance set forth in  <u>Stubbs-</u>

Danielson v. Astrue, 539 F.3d 1169 (9th Cir. 2008).  There the court concluded that limiting a claimant to simple tasks adequately addressed the claimant's mental limitations and limitations of concentration, persistence, and pace because that limitation was consistent with the restrictions identified in the claimant's medical record.  Id. at 1174.  However, the ALJ's error in failing to credit the opinion of Dr. Prescott and in failing to give sufficient reasons for discounting the testimony of the lay witness direct a recommendation that this action be remanded for an award of benefits and, therefore, such an analysis is not required.

## Conclusion

For the reasons set out above, a Judgment should be entered REVERSING the Commissioner's decision and REMANDING this action to the Agency for an award of benefits.

## Scheduling Order

This Findings and Recommendation will be referred to a district judge.  Objections, if any, are due April 18, 2014.  If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 1st day of April, 2014.


  /s/ John Jelderks_____
John Jelderks
U.S. Magistrate Judge


FINDINGS AND RECOMMENDATION – 21